Gary M. Fellner, Esq.
Russell L. Porter
**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
Morristown, NJ  07962-1997
(973) 538-4006
gmfellner@pbnlaw.com
rlporter@pbnlaw.com
Attorneys for Plaintiff Ultraflex Systems of Florida, Inc.
d/b/a Ultraflex Systems, Inc.

**FOR THE UNITED STATES DISTRICT COURT
IN THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ULTRAFLEX SYSTEMS OF FLORIDA, INC., d/b/a ULTRAFLEX SYSTEMS, INC.,<br><br>              Plaintiff,<br>   v.<br><br>VERITIV OPERATING COMPANY,<br><br>              Defendant. | Civil Action No. 2:19-cv-13308-KM-MAH |
| VERITIV OPERATING COMPANY,<br><br>              Counterclaimant,<br>   -v-<br><br>ULTRAFLEX SYSTEMS OF FLORIDA, INC., d/b/a ULTRAFLEX SYSTEMS, INC.,<br><br>              Counterclaim-Defendant | |

**PLAINTIFF'S MEMORANDUM OF LAW  IN OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER OR DISMISS**

**PORZIO, BROMBERG & NEWMAN, P.C.**
156 WEST 56TH STREET, SUITE 803
NEW YORK, NY 10019
(646) 348-6722
*ATTORNEYS FOR PLAINTIFF ULTRAFLEX SYSTEMS OF FLORIDA, INC.*

4245067

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS..............................................................................................................2

ARGUMENT ..................................................................................................................................4

    A.    Veritiv's Alleged Terms and Conditions have not been Properly Authenticated and Should be Rejected ................................................................................................4

    B.    Veritiv's Forum Selection Clause in its Terms and Conditions Form is Not Binding on Ultraflex ........................................................................................................5

    C.    The Traditional Factors on a Motion to Transfer Weigh in Favor of litigating in this Court ..................................................................................................................12

    D.    Veritiv's Forum Selection Clause Does Not Authorize Suit in United States District Court for the District of Delaware ......................................................................13

    E.    Forum Non Conveniens Does Not Warrant Dismissal....................................................14

CONCLUSION .............................................................................................................................15

4245067

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

Ajzen, Inc. v. Donald Yu, 2013 WL 97916 (N.D. Ca. 2013)..........................................................13

Atlantic Marine Construction Co., Inc. v. U.S Dist Court, 571 U.S. 49 (2013).........................5, 6

Brevel Motors Inc. v. Vendo Co., 1986 WL 215118 (D.N.J. 1986) ..................................9, 10, 12

Cadapult Graphics Sys, Inc. v. Tektomix, Inc., 98 F. Supp. 2d 560 (D.N.J.) .................................5

Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1990) ............................................................5

CECG, Inc. v. Magic Software Enterprises, Inc. and Magic Software Enterprises, Ltd., 51 Fed.Appx. 359 (3rd Cir. 2002).......................................................................................11

Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569 (10th Cir. 1984) ................................................10

Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)............................................................................12

JOM, Inc. v. Adell Plastics, Inc., 193 F.3d 47 (1st Cir. 1999) ..................................................9, 11

Manasher v. NECC Telecom, 2007 U.S. Dist. Lexis 68795 (E.D. Mich. 2007).............................5

Option Wireless, Ltd. v. OpenPeak, Inc., 2012 WL 6045936 (S.D.F.L.A. 2012) ........................10

Richardson v. Union Carbide Industrial Gases, Inc., 347 N.J. Super. 524 (App. Div. 2002)..................................................................................................................7, 9, 12

Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473 (D.N.J. 1993) ...........................................12

Spatz v. Nascone, 364 F ................................................................................................................13

Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22 (1988) ................................................................13

Sun Coast Merchandise Corp. v. Myron Corp., 393 N.J. Super. 55 (App. Div. 2007)..................................................................................................................................7

Tecumseh Intern. Corp. v. City of Springfield, 70 Ill. App.3d 101 (4th Dist. 1979)....................11

4245067

**STATUTES**

5A Del. C. 1953, § 2-101 ................................................................................................. 7

28 U.S.C. § 1404(a) .................................................................................................... 2, 4

N.J.S.A. 12A:2-207 ........................................................................................................ 9

N.J.S.A. 12A:2-207(3) .................................................................................................... 7

N.J.S.A. § 12A:2-201 ..................................................................................................... 7

UCC § 2–207 ........................................................................................... 5, 7, 8, 9, 11, 12

UCC § 2–207 (2) ..................................................................................................... 8, 9,12

UCC § 2–207(3) ........................................................................................................ 9, 11

UCC § 2-207(1) ........................................................................................................ 10, 12

UCC § 2-207(2)(c) ........................................................................................................ 10

UCC § 2-207(3) ........................................................................................................ 11, 12

## PRELIMINARY STATEMENT

This case is a straightforward breach of contract action. Plaintiff Ultraflex Systems of Florida, Inc., d/b/a Ultraflex Systems, Inc., ("Ultraflex") seeks $109,924 due under invoices issued from late 2018 through early 2019 for digital print material sold to Defendant Veritiv Operating Company ("Veritiv").  Veritiv responded to Ultraflex's Complaint with a counterclaim alleging that it is entitled to an offset for separate material that it bought from Ultraflex in October 2017 that was purportedly defective, a claim Ultraflex disputes.

The issue on Veritiv's motion to dismiss or transfer, filed with its answer and counterclaim, is whether this case should remain in this Court where Ultraflex filed the action, where both parties admittedly do business, and where most witnesses are located, or whether the case should be dismissed or transferred to Delaware – a jurisdiction where none of the parties reside or do business - based on an unsigned, boilerplate form Veritiv's counsel offers containing terms that have not been shown to apply to the specific sales at issue.  By contrast, Ultraflex's CEO, John Schleicher, has submitted a declaration in opposition evidencing the terms and conditions that Ultraflex imposed for each of the relevant sales.  Those terms were contained with sales order confirmations issued immediately after receiving Veritiv's purchase orders. Ultraflex's form requires that litigation of any dispute be heard in the state or federal courts in New Jersey.

Accordingly, Ultraflex has shown, through proper authentication, that its contractual terms requiring litigation in this Court apply and should be enforced.  And even if the Court gave credence to Veritiv's form, despite lack of proper foundation, the different, conflicting provisions on forum selection in the parties' respective forms cancel each other out. As such, Ultraflex's

chosen forum, which is a much more convenient forum than Delaware, should be given full deference. Delaware has no nexus to this dispute other than Veritiv's state of incorporation.

Yet, Veritiv now moves to transfer the action to the United States District Court in Delaware under 28 U.S.C. § 1404(a), or alternatively, dismiss the action in favor of Delaware state court. Veritiv fails to establish which specific terms Veritiv attached to its purchase orders, or incorporated from its website, that are relevant to *these* transactions now at issue spanning from late 2017 through early 2019.

In the unlikely event the Court holds that Veritiv's form applies and must be enforced despite lack of authentication, the obvious conflict in the parties' forms, and considerations of fairness and convenience, a transfer to the United States District Court in Delaware is improper. Veritiv's naked form, untied to these transactions, refers to venue lying in "the Courts of Delaware," words that mean Delaware *state* court, not federal court. A transfer to the Federal Court in Delaware, therefore, is improper.

## STATEMENT OF FACTS

As stated in the Complaint and Answer (ECF No. 1 and 4), as well as in the accompanying Declaration of Ultraflex's CEO, John E. Schleicher, Jr., a person with personal direct knowledge of the facts, this action was recently filed due to non-payment of several invoices totaling $109,923.81 issued by Ultraflex from September 2018 to March 2019. The materials sold were rolls of substrates used in the digital print media industry. (Schleicher Dec., ¶ 2).

Ultraflex is a Florida Corporation that does business in Randolph, New Jersey. (Complaint, ¶ 2) Veritiv[1] is a Delaware Corporation in Atlanta that does business and is registered as such in New Jersey. (Complaint, ¶ 4; Answer, ¶ 4). The parties are both in the sign and banner industry and did business together since 2009. (Complaint, ¶¶ 9-12).

Veritiv alleges an offsetting counterclaim for damages of roughly $83,000 based on allegedly defective goods sold earlier by Ultraflex to Veritiv in October 2017. (Counterclaim, ¶¶ 17-27). Veritiv contends that it learned of the alleged defects in early 2018 and issued its customer credit in full for that shipment. (Counterclaim, ¶¶ 18-22). Ultraflex issued Veritiv a $4,716 credit for the goods. (Counterclaim, ¶ 20). In other words, Veritiv bought over $100,000 worth of goods from Ultraflex, well after it learned of some "defects" in earlier sales, and received a credit from Ultraflex. Yet it refuses to pay. Though the Counterclaim does not allege which customer asserted the alleged defects in the earlier shipment, the customer was Circle Graphics, Inc. in Colorado. (Schleicher Dec., ¶¶ 4-5). That company, like Ultraflex, has no known connection to Delaware.

On its motion to transfer/dismiss, Veritiv offers, through its attorney, a form called "terms and conditions of purchase" as the sole basis for the motion. (Declaration of Frederick L. Whitmer, Esq., dated June 27, 2019 [the "Whitmer Dec."], Ex. A). Veritiv relies on Section 17 of that form, which contains print to claim that Ultraflex agreed to be bound by its terms. In particular, the clause says "Seller agrees to subject itself to the Courts of Delaware and such venue shall be exclusive regarding disputes arising out of these terms." (Whitmer Dec., Ex. A).

---

[1] See Declaration of John E. Schleicher, Jr. dated August 5, 2019 ("Schleicher Dec.").

3

Nowhere is there evidence to show when this one-page form was prepared, how it applied to Ultraflex, or whether it even existed when the subject transactions occurred.

As stated in the Schleicher Declaration, within 24 hours of receiving Veritiv's purchase orders on all transactions, Ultraflex issued sales order confirmations that contain a separate page with terms and conditions containing an exclusive forum selection clause. (Schleicher Dec., ¶ 8, Ex. 1). The relevant portion of Ultraflex's sales order confirmation states:

> This agreement is effective upon shipment of the Product by Ultraflex. This agreement is governed by New Jersey law and Purchaser agrees that in the event of any dispute arising under or relating to this purchase and sale agreement that Purchaser shall submit to the exclusive personal jurisdiction of the state and federal courts situated in New Jersey.

(Id.).

After filing the Complaint (ECF No. 1), Veritiv moved to transfer the action to the United States District of Delaware under 28 U.S.C. § 1404(a), or alternatively, to dismiss the case without prejudice on *forum non conveniens* grounds so that the case can be refiled in the state courts of Delaware. In either event, Veritiv relies solely on the terms and conditions form attached to its counsel's declaration.

## ARGUMENT

### A. Veritiv's Alleged Terms and Conditions have not been Properly Authenticated and Should be Rejected

As a threshold matter, Veritiv relies on a one-page "terms and conditions" form now offered through its counsel without properly authenticating it as the controlling document that governs each of the relevant transactions. Veritiv offers only an unauthenticated copy of its terms and conditions annexed as an exhibit to its attorney's declaration. (Whitmer Dec., Ex. A). Mr. Whitmer has no personal knowledge of the relevant forms, transactions, or documents, and is not

4


competent to offer the "terms and conditions" form on this motion or be in a position to state, from personal knowledge, that the form attached to his declaration was sent to Ultraflex, or whether it actually applied to and was in force during each of the relevant transactions.[2]

### B. Veritiv's Forum Selection Clause in its Terms and Conditions Form is Not Binding on Ultraflex

Even if the Court casts aside that Veritiv has not properly authenticated the document relied on as binding on Ultraflex for each transaction, Veritiv's motion still fails. It principally cites to case law standing for the well-settled proposition that a signed agreement containing a forum selection clause is enforceable absent certain exceptions.[3] That common factual scenario, however, does not apply because no signed agreement exists. Instead, Ultraflex and Veritiv transacted business for years through an exchange of purchase orders, sales order confirmations and invoices. (Schleicher Dec., ¶¶ 7-8). As such, putting aside Veritiv's inability to demonstrate that the form on which it relies applies to Ultraflex (which should end the inquiry and result in denial of Veritiv's motion), this case is governed by Section 2-207 of the Uniform Commercial

---

[2]   To the extent Veritiv may argue in reply that its form containing the forum selection clause was incorporated by reference from purchase orders not offered on the motion in chief, courts have rejected attempts to insert online terms into an agreement. *E.g.*, Manasher v. NECC Telecom, 2007 U.S. Dist. Lexis 68795 (E.D. Mich. 2007) (court refused to enforce arbitration clause in online terms and conditions where reference to such terms was found at the bottom of the second page of the party's invoice because it was not clear that parties intended it to be part of their agreement).

[3]   For example, Vertiv cites to Atlantic Marine Construction Co., Inc. v. U.S Dist Court, 571 U.S. 49 (2013). That case concerned a subcontract agreement's forum selection clause signed by the parties. *See also* Cadapult Graphics Sys, Inc. v. Tektomix, Inc., 98 F. Supp. 2d 560 (D.N.J.) (signed value added agreement contained enforceable forum selection clause). Though Veritiv cites the Supreme Court case in Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1990), a case involving a passenger cruise ship's forum selection clause inserted into the ticket, Justice Blackman there held that a form containing a forum selection clause may be enforced but must scrutinized and be fundamentally fair. 499 U.S. at 595.

Code ("UCC"), something Veritiv completely omits.[4] That section is known as the "battle of the forms" where merchants exchange forms that often result in conflicting provisions. When that happens, as discussed below, the conflicting terms are "knocked out" and the contract remains based on consistent terms and UCC provisions.

Inexplicably, Veritiv ignored the forms sent from Ultraflex in this case and only shined a light in its motion on one form for which, as stated, no credible evidence is offered to show that it applies to each of Ultraflex's sales to Veritiv. Veritiv argues at page 12 in its brief in support of its motion that Ultraflex "fully agreed to litigate any claims against Veritiv exclusively in the Courts of Delaware…" There is no evidence to support this. Likewise, Veritiv makes the unfounded statement in its brief that Ultraflex "waived the right to challenge" Veritiv's preprinted form. (Veritiv Mem. at 8)[5] There has been no waiver. As the facts here show, Ultraflex sent its own form to Veritiv on each sale, promptly after each purchase order was issued. Ultraflex's written sales order confirmations were sent to Veritiv for the transactions at issue here. (Schleicher Dec. ¶ 8, Ex. 1). The relevant provisions of Ultraflex's terms and conditions with the sales order provide that the agreement "is governed by New Jersey law and Purchaser agrees that in the event of any dispute arising under or relating to this purchase and

---

[4]   Veritiv suggests that Ultraflex somehow withheld evidence or acted improperly by filing the action in this Court. (See Vertiv's Mem. at 7) (Ultraflex's failure to take heed of the terms and conditions is "untenable"). To the contrary, Ultraflex was well aware of the forum selection clause in Ultraflex's terms and conditions. Its counsel was also not unmindful of the knock out rule discussed *infra*.

[5]   Veritiv makes this argument by citing <u>Atlantic Marine</u> 571 U.S. 49, a case that involved a signed contract with an express waiver. Ultraflex promptly submitted is sales order confirmation within a day of receipt of any purchase order from Veritiv. Thus, even if one assumed the Veritiv established that its purchase orders that apply to the sales in question contained a forum selection clause in favor of Delaware Courts, or was on Veritiv's website at all relevant times as referenced in its purchase orders, no waiver occurred under these facts.

sale agreement that Purchaser shall submit to the exclusive personal jurisdiction of the state and federal courts situated in New Jersey." (Id.).

Assuming Veritiv's form does apply to all sales at issue here -- an assumption that is not born out by the evidence -- this case presents a "battle of the forms." When that happens, the clauses in conflict are "knocked out" and the balance of the terms not in conflict apply. As stated by the New Jersey Appellate Division in Richardson v. Union Carbide Industrial Gases, Inc., 347 N.J. Super. 524, 526 (App. Div. 2002) the "effect of applying the 'knock-out' rule is that the conflicting terms do not become part of the parties' contract and the contract consists of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act." N.J.S.A. 12A:2-207(3).

At common law, an offer and acceptance had to mirror each other. Sun Coast Merchandise Corp. v. Myron Corp., 393 N.J. Super. 55, 71 (App. Div. 2007). The enactment of UCC Article II, however, ended the "era when a valid, binding contract could only come into existence when a party's acceptance mirrored the other party's offer. Id. at 71.[6] The applicable provision of UCC Article II is § 2-207:

> **Additional terms in acceptance or confirmation**
>
> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

---

[6] UCC Article II is codified in New Jersey Law as N.J.S.A. § 12A:2-201, et. seq. and Delaware Law as 5A Del. C. 1953, § 2-101, et. seq.

> (a) the offer expressly limits acceptance to the terms of the offer;
>
> (b) they materially alter it; or
>
> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

N.J. Stat. § 12A:2-207[7]

There are three ways a contract can be formed under UCC § 2-207:

> First, if the parties exchange forms with divergent terms, yet the seller's invoice does not state that its acceptance is made "expressly conditional" on the buyer's assent to any additional or different terms in the invoice, a contract is formed, and its precise terms are determined through recourse to the three-part test in § 2–207(2).
>
> Second, if the seller does make its acceptance "expressly conditional" on the buyer's assent to any additional or divergent terms in the seller's invoice, the invoice is merely a counteroffer, and a contract is formed only when the buyer expresses its affirmative acceptance of the seller's counteroffer…
>
> Finally, where for any reason the exchange of forms does not result in contract formation (e.g., the buyer "expressly limits acceptance to the terms of [its offer]" under § 2–207(2)(a), or the buyer does not accept the seller's counteroffer under the second clause of § 2–207(1)), a contract nonetheless is formed if their subsequent conduct—for instance, the seller ships and the buyer accepts the goods—demonstrates that the parties believed that a binding agreement had been formed. The terms of their agreement would

---

[7]   UCC § 2-207 is codified in Delaware law as 5A Del. C. 1953, § 2-207.

> then be determined under the "default" test in § 2–207(3), which implicitly incorporates the criteria prescribed in § 2–207(2).

JOM, Inc. v. Adell Plastics, Inc., 193 F.3d 47, 53–54 (1st Cir. 1999).

The issue here, as in any battle of the forms paradigm, is what becomes of the conflicting clauses in the forms. In this case, that means the parties' choice of law and forum selection clauses in the parties' respective forms, as they are in direct conflict.

Official Comment 6 to UCC § 2-207 ("Comment 6") provides the answer:

> Where clauses on confirming forms sent by both parties conflict each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result the requirement that there be notice of objection which is found in subsection (2) is satisfied and the conflicting terms do not become a part of the contract. The contract then consists of the terms originally expressly agreed to, terms on which the confirmations agree, and terms supplied by this Act, including subsection (2).

Thus, under the "knock-out" rule, neither Veritiv nor Ultraflex's choice of law or forum selection clauses became part of their agreement as they are in direct conflict. Multiple courts have reached this conclusion in similar circumstances. Thus, citing to comment six of Section 2-207, the Appellate Division in Richardson, supra, held that the "knock out" rule is the law of New Jersey. 347 N.J. Super. at 526. The Court observed:

> "N.J.S.A. 12A:2-207 was enacted to reform the common law mirror-image rule *and reject the last-shot doctrine which accorded undue advantage to the mere order in which forms were sent*." (Citing J.J. White and R.S. Summers, Uniform Commercial Code, § 1-2, at 25 (2d ed.1980). Our adoption of the "knock-out" rule advances the goal of reformation of the common law mirror-image rule.

(Id. at 534) (emphasis added).

.

Similarly, in Brevel Motors Inc. v. Vendo Co., 1986 WL 215118 (D.N.J. 1986), the Court held that conflicting terms in a buyer and seller's form did not become part of their agreement under Comment 6 of Section 2-207. Like Veritiv's terms in its terms and conditions form, the buyer's purchase order in Brevel required seller to consent to all of its terms and stated that no conflicting terms would be binding without the buyer's written consent. Id. at *1. The seller's invoice contained conflicting terms regarding indemnification and warranties. Id. at *2. Despite the strict language in the buyer's form, the Court understood that there was no intention to adhere to those terms, and held that the conflicting nature of the terms "are viewed as a notice of objection to the other party" under UCC § 2-207(2)(c). Id. at *4. Comment 6 to Section 2-207, therefore, applied, and required application of the knock out rule so conflicting terms did "not become part of the contract." Id.

And in Option Wireless, Ltd. v. OpenPeak, Inc., 2012 WL 6045936 (S.D.F.L.A. 2012), the purchaser and seller's forms conflicted as to recoverability of consequential damages. Id. at *5. Despite the conflict on that point, the Court found that the seller's invoice operated as an acceptance under UCC § 2-207(1) and then applied § 2-207(2)(c) to conclude that the conflicting terms in the parties' forms operated as a notification of objection by the parties. Id. at *7-8. The Court then applied the knock out rule, stating that "conflicting terms in exchanged writings must be assumed to constitute mutual objections to each other causing a mutual knockout of both parties' terms." Id. at *8 (citing Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569, 1578-79 (10th Cir. 1984).

Veritiv's choice of law and forum selection clauses did not become part of the agreement with Ultraflex due to the conflicting provisions and Ultraflex's objections to Veritiv's terms through the submission of its sales order confirmations. Simply stated, Ultraflex's conflicting

terms served as notice of their objection to Veritiv's terms. Comment 6 of Section 2-207 teaches that conflicting terms are excluded, and the parties' contract consists of the mutually agreed upon terms, plus any supplemental terms provided as gap fillers under the UCC. But the UCC contains no supplementary terms on choice of law or forum selection. As such, the parties here may sue in any court with proper jurisdiction. Choice of law would be decided under normal conflict of law provisions, and the same holds true for a motion to transfer.

Veritiv's forum selection clause is also unenforceable under UCC § 2-207(3). That is, the Court can readily conclude that the conflict in Veritiv's and Ultraflex's forms means that no agreement at any time was reached since the parties did not agree to all material terms. See Tecumseh Intern. Corp. v. City of Springfield, 70 Ill. App.3d 101, 105 (4th Dist. 1979) (noting that no contract is entered into where an offer expressly limits acceptance to terms contained therein and purported acceptance proposes different terms). UCC § 2-207(3) applies "where for any reason the exchange of forms does not result in contract formation (*e.g.* the buyer expressly limits acceptance to the terms of its offer…" JOM, Inc. v. Adell Plastics, Inc., 193 F.3d 47, 54 (1st Cir. 1999). In that scenario, "a contract is nonetheless formed if [the parties'] subsequent conduct … demonstrates that the parties believed that a binding agreement had been formed." Id.

In CECG, Inc. v. Magic Software Enterprises, Inc. and Magic Software Enterprises, Ltd., 51 Fed.Appx. 359, 365, n.7 (3rd Cir. 2002), the Third Circuit similarly noted:

> "[e]ven if acceptance were expressly conditional on assent to the [buyer's] terms, and thus there were no written contract, the conduct of the parties established a contractual relationship. UCC § 2–207(3) provides that the conduct of both parties can establish a contract, and that, to the extent that there is no agreement, the UCC fills any gaps in the contract. Both parties clearly conducted themselves in a manner that reflected that there was a contractual relationship; the disagreement is as to what the terms of the contract are. The writings of the parties, however, do not agree …"

11

Pursuant to UCC § 2-207(3), the parties' conduct itself evidences their belief that a contract existed over the years, even where their forms conflicted. The parties were engaged in a longstanding course of conduct, and Ultraflex routinely sent Veritiv its forms with the above stated language. Under UCC § 2-207(3), the law would imply a contract consisting upon those terms that the parties agreed only, and any supplementary terms filled in under the UCC. See Brevel Motors Inc. v. Vendo Co., at p. 3 (noting that conflicting terms in parties' forms would not be enforced under either a UCC § 2-207(1) or (3) analysis). The UCC does not provide supplementary fillers as to choice of law of forum selection.

The question of whether §2-207(2) or § 2-207(3) applies is a question of fact. As stated by the Appellate Division in Sun Coast Merchandise Corp. v, Myron Corp., 393 N.J. Super. 55, 75-76 (App Div. 2007), cert. denied, 194 N.J. 270 (2008), a jury could find

> that … [the parties'] communications constituted mere negotiations that never ripened into a contract. By the same token, the jury could find that a contract was formed despite a failure or an inability to agree on all terms. N.J.S.A. 12A:2-207(2) provides that an acceptance coupled with the proposal of new or different terms does not necessarily preclude the formation of a contract. In such a circumstance, either the new or different terms proposed by the offeree would become part of the contract or those terms could be provided by the gap-filling provisions of the UCC…. *All these questions required that the factfinder analyze the meaning and significance of the parties' communications based upon the legal framework provided by the UCC*." Citing Richardson v. Union Carbide Indus. Gases, Inc., 347 N.J.Super. 524, 532-33 (emphasis added).

C.  **The Traditional Factors on a Motion to Transfer Weigh in Favor of litigating in this Court**

When no forum selection clause exists -- as true here given the application of Comment Six or § 2-207(3) -- and a party seeks to transfer a case to another forum, the courts look at the traditional factors to decide a transfer motion. Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp.

12

473, 489-90 (D.N.J. 1993) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-30 (1988). The Courts defer to Plaintiff's choice of forum and then consider the convenience of the parties and the witnesses, as well as the interests of justice. Id. at 480. (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)).

These factors support keeping the case in this Court. Ultraflex does business in New Jersey, Veritiv likewise admits in its Answer that it does business in Clifton and Westhampton New Jersey, and both parties are qualified to do business in this State. (Answer, ¶ 4). Neither party has connections to Delaware other than the fact that Veritiv chose to incorporate there. Moreover, the customer that Veritiv chose to issue a refund to, Circle Graphics, Inc., is also not located in Delaware. Neither convenience, expedience, justice nor any other relevant consideration warrant disturbance of Ultraflex's decision to bring this case in this Court.

### D. Veritiv's Forum Selection Clause Does Not Authorize Suit in United States District Court for the District of Delaware

If the Court rejects the above and accepts Veritiv's arguments that none of the forms Ultraflex issued have any validity and only Veritiv's form controls this dispute, transfer to federal court in Delaware is inappropriate. Veritiv's forum selection clause permits suit in only the state courts of Delaware. Veritiv's form states "Seller agrees to subject itself to the courts of Delaware." (Whitmer Dec., Ex. A, Article 17). Veritiv admits that the clause fails to specify whether "state or federal court – or both – might be appropriate." (Veritiv Mem. at 12). That of course is in contrast with the sales order confirmations issued by Ultraflex that expressly say the exclusive jurisdiction for disputes rests in the state or federal courts in New Jersey. The two provisions are different. See, e.g., Spatz v. Nascone, 364 F, Supp. 967 (W.D. Pa. 1973) (contract provision requiring suit to be brought in courts of Commonwealth of Pennsylvania interpreted to mean state courts in Pennsylvania and not federal courts in Pennsylvania). If a party intends to

13

select a forum for disputes in either federal or state court, it is very easy to say precisely that. E.g., Ajzen, Inc. v. Donald Yu, 2013 WL 97916 (N.D. Ca. 2013) (signed asset purchase agreement contained a forum selection clause that expressly stated suit would be filed in state or federal courts in Delaware).

### E. *Forum Non Conveniens* Does Not Warrant Dismissal

Finally, Veritiv requests dismissal on *forum non conveniens* grounds by allowing the case to be refiled in Delaware State Court. (Veritiv Brief, p. 12). This argument should be rejected because it presumes that Veritiv's choice of law and forum selection clauses are binding. (Veritiv Brief, p. 13). As discussed above, they are not, and nothing is offered to justify a transfer to Delaware State Court.

## **CONCLUSION**

Veritiv has failed to demonstrate that transfer or dismissal is warranted. Accordingly, Ultraflex respectfully requests that the Court deny Veritiv's motion in its entirety.

Dated: New York, New York
       August 5, 2019

**PORZIO, BROMBERG & NEWMAN, P.C.**


By:   <u>s/Gary M. Fellner</u>
      Gary M. Fellner
      Russell L. Porter
156 West 56th Street, Suite 803
New York, NY 10019
Tel: 212-265-6888
*Attorneys for Plaintiff Ultraflex Systems of Florida, Inc., d/b/a Ultraflex Systems, Inc.*