UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ULTRAFLEX SYSTEMS OF FLORIDA, INC., d/b/a ULTRAFLEX SYSTEMS, INC., <br><br>Plaintiff,<br><br>v.<br><br>VERITEV OPERATING CO.,<br><br>Defendant. | Civil Action No. 19-13308 (KM) (MAH)<br><br>OPINION |

## I. INTRODUCTION

This matter comes before the Court by way of Defendant/counterclaimant Veritiv Operating Co.'s ("Defendant") motion to transfer this action to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a) or, in the alternative, to dismiss this action on *forum non conveniens* grounds. Def's. Mot. to Transfer or Dismiss, June 27, 2019, D.E. 6. The Court has decided this motion without oral argument. *See* Local Civ. R. 78.1(b). For the reasons set forth below, the Court will deny Defendant's motion.

## II. BACKGROUND

This action arises out of allegedly unpaid invoices for the sale of commercial substrate materials for digital printing. Plaintiff/counter-defendant Ultraflex Systems of Florida, Inc. ("Plaintiff") is a "worldwide distribution company of substrate fabrics and accessories used for digital printing" that is incorporated and headquartered in Florida. Compl. ¶ 2, June 3, 2019, D.E. 1. Plaintiff maintains a distribution warehouse and offices in Randolph, New Jersey. *Id.* ¶ 3. Defendant is a "business-to-business distributor of packaging, facility solutions, print and publishing products and services." *Id.* ¶ 5. Defendant is a Delaware corporation with a principal

1

place of business in Atlanta, Georgia, and conducts business in New Jersey from two offices located in this state. *Id.* ¶ 4.

The parties have regularly done business together for the past decade. *Id.* ¶ 9. "At all times, the parties exchanged routine documents such as purchase orders, sales order confirmations, and invoices." Decl. of John E. Schleicher, Jr. in Opp'n to Def.'s Mot. to Transfer ("Schleicher Decl.") ¶ 7, Aug. 5, 2019, D.E. 13-1. Defendant would initiate the parties' transactions by electronically sending purchase orders that contained Defendant's Terms and Conditions of Purchase ("Veritiv Terms and Conditions"). Decl. of Scott Dickerson in Supp. of Def.'s Mot. to Transfer ("Dickerson Decl.") ¶¶ 4-5, Aug. 20, 2019, D.E. 19. Paragraph One of the Terms and Conditions prescribes:

> **Acceptance; Entire Agreement** – Unless otherwise agreed to in writing, these Terms and Conditions of Purchase ("Terms") apply to all purchases by Veritiv Operating Company ("Buyer") from the supplier of any goods and/or services ("Seller") hereunder. These Terms constitute Buyer's offer and may be accepted by Seller only in accordance with the terms hereof. Seller's acceptance of these Terms and any order hereunder shall occur either through commencement of performance or acknowledgment of the order. By accepting an order hereunder, Seller waives all terms and conditions contained in its quotation, acknowledgment, invoice or other documents which are different from or additional to those contained herein and all such different or additional terms and conditions shall be null and void. No addition to, waiver or modification of, any provisions herein contained shall be of any force or effect unless made in writing and executed by Buyer's authorized representative.

Dickerson Decl., Ex. A, D.E. 19-1. Paragraph Seventeen, titled "Miscellaneous," contains both a choice-of-law provision and a forum-selection clause:

> These terms, any order hereunder, and the rights and obligations of the parties thereto, shall be governed by the laws of the State of Delaware, without giving effect to its principles of conflicts of law. Seller agrees to subject itself to the courts of Delaware and such

2

> venue shall be exclusive regarding disputes arising out of these Terms.

*Id.*; *see also* Def.'s Answer & Countercls. ¶ 16, June 27, 2019, D.E. 4.

Upon receipt of a purchase order, Plaintiff would promptly transmit to Defendant a sales order confirmation that included a copy of its own terms and conditions of sale ("Ultraflex Terms and Conditions"). *See* Schleicher Decl. ¶ 8; Dickerson Decl. ¶¶ 7-8. The final provision of the Ultraflex Terms and Conditions prescribes:

> **MISCELLANEOUS:** This agreement is effective upon shipment of the Product by Ultraflex. This agreement is governed by New Jersey law and Purchaser agrees that in the event of any dispute arising under or relating to this purchase and sale agreement that Purchaser shall submit to the exclusive personal jurisdiction of the state and federal courts situated in the State of New Jersey.

Schleicher Decl., Ex. 1, D.E. 13-2.

Defendant submitted multiple purchase orders for substrate materials to Plaintiff between September 2018 and March 2019. *See* Compl. ¶ 10; Schleicher Decl. ¶ 2. Following delivery, Plaintiff issued invoices to Defendant from its New Jersey office. Compl. ¶¶ 11-13. However, Defendant refused to pay those invoices on the basis that an October 2017 order was deemed defective by one of Defendant's customers, Circle Graphics, Inc. *See id.* ¶ 14-15; Schleicher Decl. ¶¶ 3-4. Plaintiff avers that it provided an appropriate credit for the allegedly defective shipment towards Defendant's unpaid balance from the 2018-19 purchases. Compl. ¶¶ 16-17. As a result, Plaintiff filed this breach-of-contract action seeking the unpaid balance plus interest, attorneys' fees, and late charges pursuant to the Ultraflex Terms and Conditions. *Id.* ¶¶ 18-26.

Defendant filed three counterclaims arising from the October 2017 order of allegedly defective goods. Answer & Countercls., ¶¶ 28-43. Defendant alleges that it ordered 239 rolls of graphic printing product from Plaintiff for the purpose of resale to one of its own customers. *Id.* ¶

3

17. Defendant's customer "experienced immediate printing failures" with respect to thirty of the first sixty printing rolls shipped. *Id.* ¶ 18. "As a result, [Defendant's] customer returned the remaining 30 rolls from [Defendant's] 60-roll delivery and refused to receive any further deliveries from that same batch of rolls provided by [Plaintiff]." *Id.* ¶ 19. Despite continued efforts by Defendant to obtain a full refund, Plaintiff only issued Defendant a credit for twelve of the 239 printing rolls. *Id.* ¶¶ 20-22. Defendant seeks money damages, lost profits, and other relief in conjunction with the defective sale from Plaintiff. *Id.* ¶¶ 23-27. Defendant submits that the Veritiv Terms and Conditions supplies many of its remedies it seeks by way of its counterclaims. *See id.* ¶¶ 2-4, 11-15, 24-26, 33, 39.

Defendant now moves to have this case transferred to the United States District Court for the District of Delaware pursuant to the forum-selection clause in the Veritiv Terms and Conditions or, in the alternative, dismissed on the grounds of *forum non conveniens*. *See generally* Mot. to Transfer or Dismiss, June 27, 2019, D.E. 6.

### III. DISCUSSION

#### a. Battle of the Forms

Relying on their respective term sheets, the parties dispute whether New Jersey or Delaware law applies to this action and whether Plaintiff properly filed suit in this forum. To ultimately determine whether this case must be transferred to the District of Delaware, this Court must first resolve a "battle of the forms" under Section 2-207 of the Uniform Commercial Code ("U.C.C.").[1]

---

[1] Both New Jersey and Delaware have adopted identical forms of U.C.C. § 2-207. *Compare* N.J. Stat. Ann. § 12A:2-207 *with* Del. Code Ann. tit. 6, § 2-207. Accordingly, this Court will cite to the U.C.C. directly when appropriate. *See Step-Saver Data Sys., Inc. v. Wyse Tech.*, 939 F.2d 91, 94 n.6 (3d Cir. 1991) (citing directly to the relevant U.C.C. provisions because the states at issue adopted the U.C.C. without modification); *Fresh Direct, Inc. v. Harvin Foods, Inc.*, No. 10-040,

4

Section 2-207 addresses the situation when parties consummate a sale of goods notwithstanding their exchange of non-identical term sheets. *See* U.C.C. § 2-207 cmt. 1; *Olefins Trading, Inc. v. Han Yang Chem Corp.*, 9 F.3d 282, 287-88 (3d Cir. 1993). To simplify business transactions, the drafters of the U.C.C. recognized that "a proposed deal which in commercial understanding has in fact been closed is recognized as a contract." U.C.C. § 2-207 cmt. 2. Proof of a contract can be established by either "[a] definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time" after the offer. *Id.* § 2-207(1). If the confirmation makes acceptance expressly conditional on the offeror's assent to the new terms, the parties' writings do not give rise to a valid contract. *See id.* In that context, "[c]onduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract." *Id.* § 2-207(3).

The dispute here is not over the existence of a contract arising from the purchase orders, but the terms thereof. Plaintiff's mailing of the sales confirmation constituted its acceptance of the purchase order (the offer) because Plaintiff did not condition its acceptance on Defendant's assent to the Ultraflex Terms and Conditions.[2] *See Corestar Int'l Pte. Ltd v. LPB Commc'ns, Inc.*, 513 F. Supp. 2d 107, 116-17 (D.N.J. 2007) (holding that confirmatory purchase order in response to price quotation constituted acceptance "because it was not 'expressly made conditional on asset to the additional or different terms'" (quoting U.C.C. § 2-207(1)).

---

2017 WL 1197674, at *5 n.3 (D.Del. Mar. 30, 2017) ("The court uses U.C.C. § 2-207 instead of any specific state commercial code because any state's law that could possibly be relevant to this action adopts the U.C.C. § 2-207 into its own commercial code verbatim.").

[2] Accordingly, this Court need not consider U.C.C. § 2-207(3). *See Jermax, Inc. v. AK Steel Corp.*, No. 09-4438, 2010 WL 2652276, at *4 (D.N.J. June 24, 2010) (applying U.C.C. § 2-207(3) where "the parties did not reach a binding agreement in accordance with the plain language of the parties' proposed contracts" because the confirmatory writing stated that acceptance was expressly conditioned on the buyer's assent to the additional terms).

With respect to the additional or different terms,

> UCC § 2-207 establishes a legal rule that proceeding with a contract after receiving a writing that purports to define the terms of the parties' contract is not sufficient to establish the party's consent to the terms of the writing to the extent that the terms of the writing either add to, or differ from, the terms detailed in the parties['] earlier writings or discussions.

*Step-Saver Data Sys, Inc.*, 939 F.2d at 99. In a dealing between merchants, however, the *additional* terms become part of the contract unless any one of three enumerated exceptions apply:

> (a) the offer expressly limits acceptance to the terms of the offer;
> (b) they materially alter it; or
> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

U.C.C. § 2-207(2). The fate of *conflicting* terms is less clear. The drafters of the U.C.C. provided two comments regarding that issue. Comment Three provides:

> Whether or not *additional or different* terms will become part of the agreement depends upon the provisions of subsection (2). If they are such as materially to alter the original bargain, they will not be included unless expressly agreed to by the other party. If, however, they are terms which would not so change the bargain they will be incorporated unless notice of objection to them has already been given or is given within a reasonable time.

*Id.* § 2-207 cmt. 3 (emphasis added). On the other hand, Comment Six states:

> Where clauses on confirming forms sent by both parties *conflict* each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result the requirement that there be notice of objection which is found in subsection (2) is satisfied and the conflicting terms do not become a part of the contract. The contract then consists of the terms originally expressly agreed to, terms on which the confirmations agree, and terms supplied by this Act, including subsection (2).

*Id.* § 2-207 cmt. 6 (emphasis added).

As a result, jurisdictions have developed divergent approaches for dealing with conflicting terms sent in a confirmatory writing. The majority rule is that conflicting terms are "knocked out"

and not included in the resulting contract. *See Flender Corp. v. Tippins Int'l, Inc.* 830 A.2d 1279, 1285-87 (Pa. Sup. Ct. 2003) (noting that the knockout rule "has now been adopted by a strong majority of U.S. jurisdictions that have considered the issue, and the federal courts have predicted its adoption in others"); *Richardson v. Union Carbide Indus. Gases, Inc.*, 790 A.2d 962, 967-68 (N.J. Sup. Ct. App. Div. 2002) (surveying the different approaches to the issue of conflicting terms and holding that "the majority approach, the 'knock-out' rule, is preferable and should be adopted in New Jersey"). There are two minority approaches: (1) the offeror's terms control because conflicting terms constitute material alterations under U.C.C. § 2-207(2)(b) and Comment Three; and (2) the offeror's terms control because conflicting terms are outside the scope of U.C.C. § 2-207(2) and thus are never considered. *See Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1579 (10th Cir. 1984) (outlining the three approaches and predicting that the Pennsylvania Supreme Court would adopt the knockout rule).

"Advocates of the knockout rule interpret Comment 6 to require the cancellation of terms in *both* parties' documents that conflict with one another, whether the terms are in confirmation notices or in the offer and acceptance themselves." *Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F. Supp. 2d 643, 654 (E.D. Pa. 2002) (emphasis added). An additional rationale for the knockout rule flows from the U.C.C.'s rejection of the anachronistic mirror-image rule that existed at common law. Under the mirror-image rule, any difference in the terms between the parties' writings converted the putative acceptance into a counteroffer. *See Step-Saver Data Sys, Inc.*, 939 F.2d at 99.

> If the offeror proceeded with the contract despite the differing terms of the supposed acceptance, he would, by his performance, constructively accept the terms of the "counteroffer", and be bound by its terms. As a result of these rules, the terms of the party who sent the last form, typically the seller, would become the terms of the parties'[] contract.

*Id.* The impetus for U.C.C. § 2-207 was the belief that "it would be unfair to bind the buyer of goods to the standard terms of the seller, when neither party cared sufficiently to establish expressly the terms of their agreement, simply because the seller sent the last form." *Id.*

Courts that have adopted the knockout rule have expressed similar sentiments about not binding the offeree to the boilerplate terms of the offer when those terms were not deemed sufficiently important to be negotiated by the parties:

> One should not be able to dictate the terms of the contract merely because one sent the offer. Indeed, the knockout rule recognizes that merchants are frequently willing to proceed with a transaction even though all terms have not been assented to. It would be inequitable to lend greater force to one party's preferred terms than the other's. As one court recently explained, "An approach other than the knock-out rule for conflicting terms would result in . . . [] any offeror . . . [] always prevailing on its terms solely because it sent the first form. That is not a desirable result, particularly when the parties have not negotiated for the challenged clause."

*Reilly Foam Corp.*, 206 F. Supp. 2d at 653-54 (alterations in original) (quoting *Richardson*, 790 A.2d at 968).

The parties dispute whether the knockout rule should apply in this case. Defendant relies on two of the three exceptions set forth in U.C.C. § 2-207(2). Defendant submits that Paragraph One of the Veritiv Terms and Conditions expressly limited acceptance to the terms contained therein. Def.'s Br. at 7-8, D.E. 8; Def.'s Reply Br. at 8, 10-11, D.E. 17. Defendant thus contends that, pursuant to U.C.C. § 2-207(2)(a), Plaintiff "could not unilaterally impose *any* additional terms via its acknowledgement forms without [Defendant's] written acceptance, and *any* attempt to impose new terms without [Defendant's] written assent would be null and void." Def.'s Reply Br. at 8. Defendant further asserts that Plaintiff's "choice of law and forum selection clause terms constitute 'material alter[ations]' that are not incorporated into and are excluded from the

8

agreement between the parties." *Id.* at 9 (quoting N.J. Stat. Ann. § 12A:2-207(2)(b); Del. Code Ann. tit. 6, § 2-207(2)(b)). Defendant cites Comment Three for the proposition that conflicting terms are encompassed by U.C.C. § 2-207(2)(b), and as a result, the terms of the offer control. *Id.* For its part, Plaintiff submits that the knockout rule cancels out the parties' conflicting choice of law and forum selection provisions. Pl.'s Br. at 6-7, D.E. 13. Plaintiff predominately relies on *Richardson* and Comment Six to U.C.C. § 2-207.[3] *See id.* at 9-11.

Given the parties' conflict regarding which state law applies, this Court must engage in a choice-of-law analysis. Because the knockout rule is a principle of contract interpretation, its application is a matter of state substantive law. *See Collins v. Mary Kay, Inc.*, 874 F.3d 176, 182 (3d Cir. 2017). As a federal court sitting in diversity, this Court applies New Jersey choice-of-law rules. *See id.* at 183. The first inquiry, which is dispositive in this case, "is whether the laws of the states with interests in the litigation are in conflict." *In re Accutane Litig.*, 194 A.3d 503, 517 (N.J. 2018) (quoting *McCarrell v. Hoffman-La Roche, Inc.*, 153 A.3d 207, 216 (N.J. 2017)). The Court must "examin[e] the substance of the potentially applicable laws to determine whether 'there is a distinction' between them." *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008) (quoting *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). If there is no distinction, there

---

[3] Plaintiff also argues that Defendant did not properly authenticate the Veritiv Terms and Conditions. Pl.'s Br. at 1-2, 4 (stating that Defendant's motion was supported by "an unsigned, boilerplate form Veritiv's counsel offers containing terms that have not been shown to apply to the specific sales at issue"). The Court finds that the Declaration of Scott Dickerson resolves that issue. Mr. Dickerson attests in his declaration, which was filed with Defendant's reply brief, that "Veritiv initiated each transaction by sending to Ultraflex a purchase order including the basic specifications of the rolls that Veritiv ordered and setting out its standard Terms and Conditions of Purchase . . . ." Dickerson Decl. ¶ 5. He further attests that "Veritiv's Terms have not changed in the last three years and have governed each of Veritiv's transactions with Ultraflex during that period of time." *Id.* ¶ 6. Notably, Mr. Schleicher, Ultraflex's CEO, does not attest that Ultraflex *never* received Veritiv's Terms and Conditions. Nor has Plaintiff advanced the position that it was unaware of the Veritiv Terms and Conditions throughout the parties' prior course of dealings.

is no choice-of-law issue and the forum state applies its own law. *See In re Accutane Litig.*, 194 A.3d at 517.

Although neither the Delaware Supreme Court nor the New Jersey Supreme Court has considered the knockout rule, this Court holds that there is no conflict. Both states have adopted U.C.C. § 2-207 without modification and this Court predicts that both states would align themselves with the majority of jurisdictions that have adopted the knockout rule. Indeed, one of the primary policies of the U.C.C. is to "[t]o make uniform the law among the various jurisdictions." N.J. Stat. Ann. § 12A:1-103(a)(3); Del. Code. Ann. tit. 6, § 1-103(a)(3).

This Court treats *Richardson* as persuasive authority that the New Jersey Supreme Court would adopt the knockout rule. *See Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 244 (3d Cir. 2010) ("Furthermore, in the absence of direct authority from the New Jersey Supreme Court, we may treat as persuasive authority decisions of the Appellate Division of the Superior Court of New Jersey."). With respect to Delaware, a review of Delaware case law provides this Court with no reason to believe that the Delaware Supreme Court would depart from the majority approach in this case. *See, e.g.*, *Acienro v. Worthy Bros. Pipeline Corp.*, 656 A.2d 1085, 1089 (Del. 1995) (adopting majority rule that the adoption of the U.C.C. did not displace the common law doctrine of accord and satisfaction); *Johnson v. Hockessin Tractor, Inc.*, 420 A.2d 154, 158 (Del. 1980) (adopting majority rule that the U.C.C.'s statute of limitations applies to a breach of implied warranty action where personal injury is also alleged). Accordingly, the Court holds that the knockout rule governs this case.

Applied here, the knockout rule operates to cancel out the conflicting litigation provisions. The Court reaches this conclusion notwithstanding the putative restrictions on acceptance contained in the Veritiv Terms and Conditions for several reasons. *See* Dickerson Decl., Ex. A

(stating that "[t]hese Terms constitute Buyer's offer and may be accepted by Seller only in accordance with the terms hereof[]" and that "all such different or additional terms and conditions shall be null and void"). First, U.C.C. § 2-207(2)(a) and N.J. Stat. Ann. § 12A:2-207(2)(a), by their plain language, apply only to additional terms—not conflicting terms. Pursuant to Comment Six to U.C.C. § 2-207, neither parties' proffered term becomes part of the contract. *See id.* (prescribing that "the conflicting terms do not become a part of the contract"). Second, the Superior Court of New Jersey, Appellate Division applied the knockout rule in light of similar restrictive language contained in the offer in that case. *See Richardson*, 790 A.2d at 963-64 (noting that the offer stated that "[t]his sale . . . limited to and expressly made conditional on Purchaser's asset to these Terms and Conditions"). Finally, this Court is persuaded by the rationale underlying the knockout rule and concludes that it is the most equitable approach. Defendant, as the offeror, had the opportunity to include the litigation provisions among the dickered terms if it deemed those provisions to be of sufficient importance. The inclusion of disagreeable terms should not depend on which party initiated the transaction. *See Daitom, Inc.*, 741 F.2d at 1580 ("To refuse to adopt the 'knock-out' rule . . . would serve to re-enshrine the undue advantages derived solely from the fortuitous positions of when a party sent a form.").

### b. Motion to Transfer

Having concluded that neither party's forum selection clause was incorporated into the contract for the sale of the commercial substrate materials, Defendant's motion to transfer is subject to a straightforward analysis under 28 U.S.C. § 1404. "[A] district court may transfer a civil action to another district where the case might have been brought, or to which the parties have consented, for the convenience of the parties and witnesses and in the interest of justice." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (citing *Jumara v. State*

11

*Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995)). "Factors the court must consider include the three enumerated under the statute—convenience of the parties, convenience of the witnesses, and the interests of justice—along with all other relevant private and public factors, including the plaintiff's choice of forum and the local interest in deciding local controversies close to home." *Id.* at 57 (citing *Atlantic Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49, 62 n.6 (2013)); *see also* 28 U.S.C. § 1404.

More specifically, the private interests to be balanced include:

> the plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses; and the location of books and records, well as all other practical problems that make trial of a case easy, expeditious and inexpensive.

*In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) (internal quotation marks and citations omitted). The public interests to be considered include: "the enforceability of the judgment; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (internal quotation marks and citations omitted). The movant bears the burden of establishing that transfer is warranted and must "show the proposed alternative forum is not only adequate, but also more appropriate than the present forum." *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 575 (D.N.J. 2000).

Aside from Defendant's preference to sue and be sued in Delaware, this Court finds that many of the private factors weighs against transfer. Plaintiff filed this breach-of-contract action in New Jersey and the parties issued the purchase orders and invoices in this state. *See* Compl. ¶ 7, 10, 13; Schleicher Decl. ¶ 6. Both parties operate on a national scale and do business in New

Jersey. *See* Compl. ¶¶ 2, 5; Schleicher Decl. ¶ 6. At least some of Plaintiff's witnesses and its books and records are associated with its Randolph, New Jersey facility. With respect to Defendant's counterclaim, the client who allegedly received the defective good is based in Colorado and has no clear ties to either desired forum. Accordingly, it would not inconvenience the parties and witnesses to litigate this matter in New Jersey where they engaged in many of the commercial dealings at issue as opposed to Delaware, which has little to no connection to the disputed transactions. *See Yocham v. Novartis Pharm. Corp.*, 565 F. Supp. 2d 554, 558 (D.N.J. 2008) ("[I]n light of the paramount consideration accorded to a plaintiff's choice of venue, courts in this district have recognized that unless the balance of inconvenience of the parties is strongly in favor of Defendant, [Plaintiff's] choice of forum should prevail." (internal quotation marks and citations omitted)).

Nor is the Court convinced that the balancing of the public interest factors weighs in favor of transfer. Although this Court's docket is busy, there are no other administrative burdens in resolving this relatively straight-forward breach of contract and warranty action that is governed by the Uniform Commercial Code. Accordingly, venue is proper in New Jersey and this Court will deny Defendant's motion to transfer this action to the District of Delaware.

**IV.** **CONCLUSION**

For the foregoing reasons, the Court denies Defendant's Motion to Transfer.

**Dated: December 27, 2019**

*s/ Michael A. Hammer*
**United States Magistrate Judge**